UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
AMERICAN OVERSIGHT,                         :
                              Plaintiff,  :
                                    :         19 Civ. 8215 (LGS)
            -against-                        :
                                    :       **OPINION AND ORDER**
U.S. DEPARTMENT OF JUSTICE, et al.,     :
                         Defendants.  :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff American Oversight brings this action against Defendants, the United States Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI"), seeking access to twenty-seven interview records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The parties cross-move for summary judgment. For the following reasons, Defendants' motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

## I. BACKGROUND

      The facts in this background section are taken from the parties' submissions and are undisputed. In 2018 and early 2019, prosecutors from the United States Attorney's Office for the Southern District of New York ("SDNY"), together with Special Agents from the FBI and the SDNY, investigated potential campaign finance violations by Michael Cohen, relating to his work for the presidential campaign of then-candidate Donald J. Trump, and others. As a result of this investigation Michael Cohen was charged in, and pleaded guilty to, an eight-count Information, comprising one count of causing an unlawful corporate contribution, one count of making an excessive campaign contribution, one count of making false statements to a bank and

five counts of income tax evasion. No one else was charged as a result of the SDNY's investigation. Mr. Cohen was sentenced, and a judgment of conviction was entered on December 12, 2019. The government's sentencing memorandum stated that Mr. Cohen had made certain illicit payments "in coordination with and at the direction of" President Trump.

SDNY prosecutors, assisted by Special Agents of the FBI and SDNY, also conducted a related investigation of whether certain unidentified individuals made false statements, gave false testimony or otherwise obstructed justice in connection with the underlying criminal investigation. No one was charged as a result of this investigation.

On July 22, 2019, Plaintiff submitted a FOIA request to the FBI and Executive Office of U.S. Attorneys, both a part of the DOJ, seeking "[a]ll FBI form 302s reflecting the content of all interviews conducted as part of the government's investigation of potential campaign finance violations committed by President Trump, the Trump Organization, Michael Cohen, or others" representing them, or any related investigation involving, for example, obstruction of justice. The request also sought records that summarized or recorded witness interviews or statements. In response to the FOIA request, the SDNY conducted a search and located a total of thirty responsive interview records. The DOJ released seven of these records with redactions and withheld the remaining twenty-three.

The parties conferred and narrowed the issues to be litigated to the DOJ's assertion of FOIA Exemptions 5, 6 and 7(C) in twenty-seven interview records. These include twenty-one FBI Form 302s prepared by FBI Special Agents, three interview memoranda prepared by SDNY Special Agents, two sets of handwritten notes prepared by prosecutors and one set of handwritten notes prepared by an FBI Special Agent. Prosecutors conducted the questioning for twenty-two of the twenty-seven interviews. For the other five interviews, Special Agents conducted the

questioning, but prosecutors discussed with them in advance the topics and certain questions. Defendant DOJ claims that, of these records, twenty are properly withheld in full and seven in part under FOIA Exemption 5 based on the attorney work product doctrine, and under Exemptions 6 and 7(C).  The seven records, withheld in part, reveal the identities of three witnesses -- Michael Cohen, Keith Davidson and John Gauger -- who publicly acknowledged that they cooperated with the investigation by providing interviews.  Plaintiff challenges the withholding of these twenty-seven documents.

## II.    STANDARD

The FOIA requires federal agencies to make records available to the public unless a statutory exemption applies.  *See* 5 U.S.C. § 552(a)(3)(A), (b)(1)-(9).  The FOIA is a far-reaching statute that allows the public to access "virtually every document generated by an agency," unless an exemption applies.  *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); *accord Am. Civ. Liberties Union v Nat'l Sec. Agency*, 925 F.3d 576, 588 (2d Cir. 2019).

FOIA disputes are typically resolved on motions for summary judgment.  *See In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020)[1] ("In the vast majority of FOIA cases . . . the agency establishes the adequacy of its search by submitting a detailed and nonconclusory affidavit on a motion for summary judgment.").  "[A] district court must review *de novo* an agency's determination to withhold information requested under the FOIA."  *Florez v. C.I.A.*, 829 F.3d 178, 182 (2d Cir. 2016); *accord Knight First Amendment Inst. at Columbia Univ. v. U.S. Dep't of Homeland Sec.*, 407 F. Supp. 3d 334, 342 (S.D.N.Y. 2019), *reconsideration denied*, No. 17 Civ. 7572, 2020 WL 5512540 (S.D.N.Y. Sept. 13, 2020).  "The agency asserting the exemption

---

[1] Where there is no binding caselaw that is directly applicable, the Court looks to caselaw in the D.C. Circuit, which, at times, is the only circuit to have considered certain questions related to the FOIA.  *See Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 72 (2d Cir 2009)).

bears the burden of proof, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure." *Osen LLC v. U.S. Cent. Command*, 969 F.3d 102, 114 (2d Cir. 2020). "The agency may meet its burden by submitting a detailed affidavit showing that the information logically falls within the claimed exemptions." *Id.* The affidavits submitted in support of the agency determination "are accorded a presumption of good faith." *Spadaro v. U.S. Customs & Border Prot.*, 978 F.3d 34, 42 (2d Cir. 2020).

### III. DISCUSSION

#### A. Exemption 5 and the Attorney Work Product Doctrine

The twenty-seven interview records were properly withheld in full or in part under FOIA Exemption 5 because they are attorney work product prepared in anticipation of litigation. Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency . . . ." 5 U.S.C. § 552(b)(5). This exemption means that agency documents that would be privileged in ordinary civil discovery are protected from disclosure under the FOIA. *See Nat'l Sec. Agency*, 925 F.3d at 589. Exemption 5 thus incorporates among other privileges the attorney work product doctrine. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, No. 19-547, 2021 WL 816352, at *4 (U.S. Mar. 4, 2021); *N.Y. Times Co. v. U.S. Dep't of Just.*, 939 F.3d 479, 489 (2d Cir. 2019).

The attorney work product doctrine, "first enunciated in the case of *Hickman v. Taylor*, 329 U.S. 495 . . . (1947), and now codified in Fed. R. Civ. P. 26(b)(3) [] prohibits one party in litigation from discovering from its adversary any 'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative' . . . ." *Id*. The doctrine protects "the attorney's factual investigations in anticipation" of litigation as well as "an attorney's mental impressions and opinions." *Id*. However, disclosure of factual

4

investigation may be compelled upon a showing of substantial need, but an attorney's mental impressions and opinions may not. Fed. R. Civ. P. 26(b)(3)(A)(ii) and (B); *see N.Y. Times Co.*, 939 F.3d at 489. The purpose of the work product doctrine is "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *Id.* (quoting *Hickman*, 329 U.S. at 510-11). This same confidentiality and protection apply to the work product of government attorneys prepared in anticipation of a contemplated prosecution. *See id.* at 485, 489, 493 (applying the work product doctrine and Exemption 5 to documents created during attorney investigation to determine whether the government would bring criminal charges).

Here, the DOJ has shown that the twenty-seven responsive interview records are protected from disclosure under Exemption 5 under the attorney work-product doctrine. The government's principal supporting affidavit comes from Thomas McKay, one of the Assistant United States Attorneys (AUSAs) who worked with the FBI on the investigation of Mr. Cohen and others. Mr. McKay attests that these interview records were prepared in anticipation of litigation, specifically for the prosecutors to evaluate whether criminal prosecutions were warranted. *See Nat'l Ass'n of Crim. Defense Laws. v. Dep't of Just. Exec. Off. for U.S. Att'ys*, 844 F.3d 246, 251 (D.C. Cir. 2016) (construing "in anticipation of litigation to mean" that the document was created with the "subjective belief that litigation was a real possibility" and that the subjective belief was "objectively reasonable") (internal quotations omitted). Mr. McKay further attests that in most cases the interview records were prepared by Special Agents of the FBI or the SDNY acting under the substantial direction of prosecutors and were reviewed by prosecutors, and that "[d]isclosure of the records would reveal prosecutors' selection of witnesses to interview, as well as their mental impressions, legal theories, case analysis, and

5

strategic decisions regarding the investigation." Finally, he attests that these records were not disclosed "in connection with any judicial or administrative proceeding[]" and have not "otherwise been publicly disclosed." Therefore, these interview records were properly withheld in whole or in part under Exemption 5. *See, e.g.*, *Jud. Watch, Inc. v. U.S. Dept. of Just.*, 806 F. App'x 5, 7 (D.C. Cir. 2020) (per curiam) (finding that FBI 302s contained "'the thoughts and opinions of counsel developed in anticipation of litigation' so as to fall within the attorney work-product privilege"); *Leopold v U.S. Dep't of Just.*, No. 19 Civ. 1278, 2020 WL 5253897, at *4-5 (D.D.C. Sept. 3, 2020) (finding that FBI 302s fall squarely within the attorney work product doctrine); *Clevenger v. U.S. Dep't of Just.*, No. 18 Civ. 1568, 2020 WL 1846565, at *16 (E.D.N.Y. Apr. 3, 2020) (finding that FBI interview transcripts are protected under Exemption 5).

Plaintiff makes several arguments to support FOIA disclosure of the interview records. First, Plaintiff argues that the interview records are not protected by the work product doctrine because they were prepared in anticipation of criminal litigation in which witness interview notes and summaries would have to be disclosed in accordance with federal law or SDNY policy. Plaintiffs cite no cases that have required disclosure on this basis and the argument in any event is unpersuasive. Disclosure obligations are different under the FOIA and in criminal proceedings. *Leopold*, 2020 WL 5253897 at *6 (differentiating disclosure in criminal trials from disclosure under the FOIA, "which turns on whether a document would usually be discoverable in a civil case"). For example, in criminal proceedings, the government may be required to turn over interview memoranda as 3500 material. *See* 18 USC § 3500. The FOIA imposes no similar obligation if the material is protected by the work product doctrine. *See Williams & Connolly v. S.E.C.*, 662 F.3d 1240, 1244 (D.C. Cir. 2011) ("In criminal trials, evidentiary privileges may give

6

way for any number of reasons [but in this FOIA action] notes not turned over in [the criminal action] still remain . . . work product material . . . ."). Work product protection may be waived as to a document that is voluntarily disclosed to an adversary, or in the context of the FOIA, a document that is publicly disclosed. *See N.Y. Times Co.*, 939 F.3d at 494. But here there was no such disclosure; Mr. Cohen pleaded guilty to the Information before any discovery obligations were triggered, and no criminal discovery was produced to Mr. Cohen or his counsel. SDNY prosecutors did not initiate prosecution against any other individuals.

Second, Plaintiff argues that the DOJ has waived work product protection over records memorializing interviews with Michael Cohen or other subjects or targets of the DOJ's investigations because the content of the interviews necessarily was disclosed to the DOJ's litigation adversaries, the very people who were interviewed. This argument is unpersuasive. First, Plaintiffs cite no case in which disclosure was required or made based on this novel theory. Second, the records themselves have never been disclosed to the DOJ's adversaries or the public, and the records necessarily reflect the thought processes of those who created them -- including what is omitted, what is recorded, how it is recorded, how it is characterized, what is emphasized, how it is organized, and so forth. Third, disclosing only certain of the 27 records because they reflect interviews of subjects or targets of the investigation would reveal the never disclosed fact of who were the uncharged subjects and targets of the investigation. Under these circumstances, there is no waiver of work product protection.

Third, Plaintiff argues that Defendants have provided insufficient evidence to demonstrate that FBI agents who drafted the interview records were acting as agents of DOJ prosecutors. This argument is contradicted by Mr. McKay's declaration which states that "302s and interview memoranda . . . were prepared by FBI or SDNY Special Agents acting under the

7

substantial direction of the prosecutors, and they were reviewed by prosecutors." "Affidavits submitted by the government are accorded a presumption of good faith." *Spadaro*, 978 F.3d at 42 (internal quotation marks omitted). Since Plaintiff has not provided any factual basis to rebut this presumption, the Court accepts Mr. McKay's statement that the interviews were conducted, and the resulting records prepared, under the direction of prosecutors. Moreover, under Rule 26, materials prepared in anticipation of litigation are protected from disclosure in civil litigation if they were prepared by a party or its representative. Fed. R. Civ. P. 26(b)(3)(A) (protecting from discovery documents "that are prepared in anticipation of litigation . . . by or for another party or its representative"). Representatives of a party are not limited to attorneys or attorneys' agents, but rather include "the other party's attorney, consultant . . . or agent." *Id*. The Special Agents who drafted the interview records were unquestionably agents of the United States, the party in question in any federal criminal prosecution.

The 27 interview records at issue are protected from disclosure under FOIA Exemption 5 under the attorney work product doctrine. As such, the Court need not determine whether the records are also exempt under Exemptions 6 and 7(c).

### B. *In Camera* Review

As an alternative to summary judgment, Plaintiff requests that the Court conduct *in camera* review "to confirm that the withheld records meet the requirements of the work product doctrine . . . ." *In camera* review should be conducted only if "questions remain after the relevant issues have been identified by the agency's public affidavits and have been tested by plaintiffs." *Ctr. for Const. Rights v. C.I.A.*, 765 F.3d 161, 165 n.9 (2d Cir. 2014) (quoting *Wilner*, 592 F.3d at 75-76). *In camera* review is appropriate only in unusual circumstances, such as where "affidavits are too conclusory to permit *de novo* review of the agency exemption

decision or where there is tangible evidence of agency bad faith." *Mobley v. C.I.A.*, 806 F.3d 568, 588 (D.C. Cir. 2015).

Plaintiff does not allege, much less produce evidence, that Defendants' declarations were written or submitted in bad faith or are otherwise unreliable.  The application for *in camera* review is denied.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: March 15, 2021
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**